**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**UNITED STATES OF AMERICA,**

**v.** **Criminal No. 3:09cr207**

**PAUL BERNARD COLEMAN,**

**Defendant.**

# MEMORANDUM OPINION

This matter comes before the Court on Defendant Paul Bernard Coleman's Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (the "Motion for Compassionate Release"). (ECF No. 244.) The United States responded in opposition and Mr. Coleman replied. (ECF No. 249; ECF No. 254.) On January 22, 2024, Mr. Coleman filed a letter motion with this Court. (ECF No. 263.) The Court has reviewed this letter and deems it to be supplemental information in support of the Motion for Compassionate Release and shall address it as such. The United States did not respond to the letter.

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion for Compassionate Release.

## I. Background

### A. Mr. Coleman's Underlying Offense and Sentence

On July 7, 2009, Mr. Coleman was charged in an indictment with two counts of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). (ECF No. 1, at 1–2.) Prior to trial, the United States filed a notice pursuant to

21 U.S.C. § 851 to establish that Mr. Coleman had committed prior drug offenses and would therefore face increased penalties for the instant drug charges. (ECF No. 17; ECF No. 18.) On September 25, 2009, following trial, a jury found Mr. Coleman guilty of both drug offenses. (ECF No. 25; ECF No. 26.) The Court subsequently imposed two concurrent prison terms on Mr. Coleman: (1) life imprisonment for possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) ("Count One"); and, (2) life imprisonment for possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 851 ("Count Two"). (ECF No. 79, at 1–2.)

Mr. Coleman appealed, and the United States Court of Appeals for the Fourth Circuit affirmed his convictions but vacated his sentences. *United States v. Coleman*, 490 F. App'x 609, 609 (4th Cir. 2012). In remanding the case to the district court, the Fourth Circuit explained that "the Fair Sentencing Act ('FSA') applies to defendants [like Coleman,] who committed their offenses prior to the effective date of the Act, August 3, 2010, but were sentenced after that date." *Id.* In February 2013, the Court resentenced Mr. Coleman in accordance with the FSA and imposed 240-month prison terms for each count, running concurrently. (ECF No. 127, at 2.) In doing so, the Court departed downward from the United States Sentencing Guidelines range of 360 months to life after finding that Mr. Coleman's criminal history overstated the seriousness of his "youthful" offenses, which "involved relatively small amounts of drugs." (ECF No. 133, at 14:22–24, 20:18–19.)

**B. <u>Mr. Coleman's Total Offense Level and Criminal History Computation</u>**

Prior to Mr. Coleman's February 19, 2013 resentencing, the probation officer prepared the Presentence Report ("PSR") for Mr. Coleman, summarizing his offense level and criminal history. (ECF No. 116 ¶¶ 33–58, 80.) Mr. Coleman's criminal history points subtotaled 9

points. (ECF No. 116, at 28–29.) However, Mr. Coleman received a two-point addition to his criminal history point computation pursuant to U.S.S.G. § 4A1.1(d) (2009) because he committed the underlying offense "during the good behavior period imposed by the Dinwiddie County Circuit Court on September 10, 2003, for his convictions of Distribution of Cocaine." (ECF No. 116, at 30.) This led to a total criminal history points of 11 and a Criminal History Category of V. (ECF No. 116, at 30.) However, Mr. Coleman received "the Career Offender enhancement pursuant to §4B1.1 of the U.S.S.G. as he was at least 18 years of [age] at the time he committed the instant offense of conviction." (ECF No. 116 ¶ 58.) This resulted in a Total Offense Level of 37 and a Criminal History Category of VI. (ECF No. 116 ¶¶ 80–81.)

Under the November 1, 2023 Sentencing Guideline Amendments, the provisions of U.S.S.G. §4A1.1(d) (2021) transitioned to U.S.S.G. §4A1.1(e) (2023). Under Amendment 821 at §4A1.1(e), Mr. Coleman would receive only one additional criminal history point for committing the offense while under any criminal justice sentence. This provision of Amendment 821 applies retroactively. U.S.S.G. §1B1.10(d) (2023).

With this adjustment, Mr. Coleman's criminal history points would be reduced from 11 to 10,[1] but his criminal history category remains VI due to his Career Offender status. Therefore, there would be no change to the guideline range or statutory penalties.

The PSR also provided information on Mr. Coleman's physical and mental condition. (ECF No. 116 ¶¶ 63–64.) Mr. Coleman reported experiencing "good physical health" and "no history of psychiatric problems." (ECF No. 116 ¶¶ 63–64.) On September 29, 2022, the probation officer submitted a "Worksheet in Response to Motion for Compassionate Release,"

[1] Under the otherwise applicable sentencing guidelines, Mr. Coleman's criminal history category would have remained at V with these 10 points.

(the "Worksheet"), indicating that Mr. Coleman currently suffers from dermatitis/eczema, hyperlipidemia, hypertension, and prediabetes. (ECF No. 245, at 2.) At the time the Worksheet was filed, Mr. Coleman had also "received the Pfizer [COVID-19] vaccine, and the Moderna booster." (ECF No. 245, at 2.)

Mr. Coleman is currently housed at RRM Raleigh in Butner, North Carolina. *See Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Apr. 8, 2024). The Bureau of Prisons ("BOP") lists Mr. Coleman's revised release date as October 18, 2024. *See id.*

**C. <u>Mr. Coleman's Current Motion for Compassionate Release</u>**

On September 20, 2022, Mr. Coleman filed the instant Motion for Compassionate Release. (ECF No. 244.) In the Motion, Mr. Coleman states that "(1) his self-motivated rehabilitation in the face of a life behind bars; (2) his mother's imminent need for his care; [and] (3) his ongoing health concerns" present "extraordinary and compelling" reasons to justify his release. (ECF No. 244, at 10.)

On October 21, 2022, the United States filed its Response in Opposition. (ECF No. 249.) The United States opposes Mr. Coleman's requested sentence reduction, emphasizing that this present motion is similar to many of Mr. Coleman's prior motions, most notably, his May 2020 Motion for Compassionate Release (the "2020 Motion"), (ECF No. 213). (ECF No. 249, at 4.) The United States emphasizes that, in its denial of Mr. Coleman's 2020 Motion, "the Court concluded that [Mr.] Coleman was ineligible for relief because despite the COVID-19 pandemic, [Mr.] Coleman's age and health did not present 'extraordinary and compelling' reasons for his release." (ECF No. 249, at 4.) The United States notes that the Court also "evaluated Coleman's post-conviction rehabilitation . . . [and] concluded that relief was not appropriate given

Coleman's criminal history and underlying convictions demonstrating that he presents a threat to the public." (ECF No. 249, at 4.)

## II. Compassionate Release Under the First Step Act of 2018

### A. Legal Standard

Prior to the First Step Act of 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP. *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[2] First Step Act of 2018, Pub. L. No.

---

[2] Section 3582(c) states, in pertinent part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

115–391, 115th Cong. (2018). Under the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences. *Coleman*, 465 F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. *See* 28 U.S.C. § 994(t).[3]

**B. <u>Exhaustion of Administrative Remedies</u>**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed", the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of

[3] 28 U.S.C. § 994(t) states:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18-CR-4 (RAJ), 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

### C. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define "extraordinary and compelling reasons" in the statute. The United States Sentencing Commission does, however, further define "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364 (JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023). The Sentencing Commission

> addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13, which provided the BOP with several categories of extraordinary and compelling reasons to consider. For years following the passage of the First Step Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with a defendant's motion for compassionate release. A court therefore remained empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.

*Burrell*, 2023 WL 7726404, at *4, n. 7 (cleaned up for readability) (citing *McCoy*, 981 F.3d at 276, 281–82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion for compassionate release. U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021) identified four bases to establish extraordinary and compelling reasons for release:

(A) medical conditions;
(B) age;
(C) family circumstances; and,
(D) other reasons.

U.S.S.G. § 1B1.13 cmt., n.1(A)–(D).

In 2023, the United States Sentencing Commission published new sentencing guidelines amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments"). Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction.[4]

These are:

(1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, [U.S.S.G.] § 1B1.13(b)(1)[5];

(2) the defendant's age, *id.* § 1B1.13(b)(2)[6];

(3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[7];

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4) [8];

---

[4] *See* Appendix A, U.S.S.G § 1B1.13(b) (2023).

[5] *See* App. A, at **U.S.S.G. § 1B1.13(b)(1);** *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt. n.1(A).**

[6] *See* App. A, at **U.S.S.G § 1B1.13(b)(2);** *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B).**

[7] *See* App. A, at **U.S.S.G. § 1B1.13(b)(3);** *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C).**

[8] *See* App. A, at **U.S.S.G. § 1B1.13(b)(4).**

> (5)'any other circumstances or combination of circumstances . . . similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5) [9], and,
>
> (6) the defendant received an 'unusually long sentence,' *id.* § 1B1.13(b)(6).[10].

*United States v. Tucker*, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. The Fourth Circuit further illuminated that:

> [w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect. These Amendments clarify the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act.[11] The *McCoy* court has

---

[9] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5);** *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt. n.1(D).**

[10] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6).**

[11] As other courts have observed,

> [t]he Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023. The Court need not reach

noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the Court. "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence[.]" *Concepcion v. United States*, 597 U.S. 481, 500 (2022). District courts within the Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and compelling reason" for compassionate release.[12] *See, e.g., United States v. Redd*, 444 F. Supp. 3d 717, 723–724 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act . . . constitute[s] [an] extraordinary and compelling reason[] that warrant[s] a reduction to Mr. Redd's sentence"); *United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face

---

> this question, however, because [Mr. Hunt] has failed to establish an extraordinary and compelling reason to reduce his sentence applying both the case law before November 1, 2023, and the amended Sentencing Guidelines.

*Burrell*, 2023 WL 7726404, at *4 n.7.

12 The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G. § 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments, ordinarily shall not be considered when determining whether extraordinary and compelling reasons exist. However, subsection (c) includes an important caveat: "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c) (2023).

today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a [forty year] lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)"); *United States v. Banks*, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between the low end of defendant's career offender sentencing range and the low end of the non-career offender sentencing range was "such [a] gross disparit[y] in sentencing" that it constituted an extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE), 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer than the high end of the guidelines that would have applied under *Norman*"[13] warranted a reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*, 2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years was a "gross disparity" and an "extraordinary and compelling" reason warranting a sentence reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief").

---

[13] *United States v. Norman*, 935 F.3d. 232 (4th Cir. 2019) (finding that defendant was subject to a lower guideline range because a drug conspiracy conviction did not constitute a "controlled substance offense" because the statute of conviction "criminalize[d] a broader range of conduct than that covered by generic conspiracy").

### 1. <u>Medical Circumstances of the Defendant</u>

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court should consider when considering medical circumstances as a basis for an extraordinary and compelling reason to grant compassionate release.

The relevant section of U.S.S.G. § 1B1.13(b) reads:

> (1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.—
>
> * * *
>
> (D) The defendant presents the following circumstances—
>
> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his [or her] prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases). However, "the mere existence of COVID-19 in society . . . cannot independently justify compassionate release." *Id.* (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (internal quotation marks omitted)).

### 2. Family Circumstances of the Defendant

In addition to medical circumstances of the Defendant, the 2023 Sentencing Guidelines Amendments provide that family circumstances of the defendant could create extraordinary and compelling reasons that may justify a reduced sentence.

The relevant section of U.S.S.G. § 1B1.13(b) reads:

> (3) FAMILY CIRCUMSTANCES OF THE DEFENDANT. —
>
> * * *
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

U.S.S.G. § 1B1.13(b)(3)(C).

## D. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A); *Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412. The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect from the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

## III. Analysis

After due consideration, the Court will deny the Motion for Compassionate Release. (ECF No. 244.) Mr. Coleman does not present "extraordinary and compelling reasons" that

support his request for a reduced sentence, nor does the Court find that the applicable statutory sentencing factors under § 3553 support a reduction in his sentence.

### A. Exhaustion of Administrative Remedies

The Court finds that Mr. Coleman has exhausted his administrative remedies. On August 3, 2022, Mr. Coleman submitted his Request for Administrative Remedy. (ECF No. 244-3, at 1.) In this request, Mr. Coleman seeks a reduction of sentence based on "'[e]xtraordinary and compelling reasons' [due] to the new ruling of U[.]S[.] v. Concepcion." (ECF No. 244-3, at 2.) The BOP did not respond to this request within 30 days, allowing for Mr. Coleman to file a Motion for Compassionate Release in district court.

The United States argues that Mr. Coleman failed to exhaust his administrative remedies with the Bureau of Prisons and did not satisfy 18 U.S.C.§ 3582(c)(1)(A). (ECF No. 249, at 9.) While the United States notes that the timing requirements of § 3582(c)(1)(A) were met, Mr. Coleman's Request for Administrative Remedy was too "generalized" and did not adequately present the extraordinary and compelling reasons for release that were subsequently argued in his Motion for Compassionate Release. (ECF No. 249, at 9.)

Mr. Coleman argues that he waited the required 30 days prior to filing this Motion in district court. (ECF No. 254, at 1–2.) Additionally, Mr. Coleman argues that because he filed these motions *pro se*, the Court should afford him "wide latitude" and that "[g]iven the nature of Mr. Coleman's abilities while incarcerated and acting pro se at the time of his administrative complaint," the Court should find that he exhausted the administrative process. (ECF No. 254, at 2.)

In *United States v. Gray*, the district court dismissed the defendant's motion for compassionate release after the defendant made new arguments before the district court that were

not presented to the BOP. No. 1:08-CR-273 (CMH), 2021 WL 3883653, at *1 (E.D. Va. Aug. 10, 2021) (citing *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021)). But in *United States v. Ferguson*, the Court of Appeals for the Fourth Circuit noted that the BOP regulation set forth in 28 C.F.R. § 571.61(a)(1) "does not purport to apply to the inmate's request to the district court or limit the district court's consideration to only those reasons identified to the BOP." 55 F.4th 262, 269 (4th Cir. 2022), *cert. denied*, No. 22-1216, 2024 WL 759802 (Feb. 26, 2024).

It is true that Mr. Coleman's initial request to the BOP was vague, however, this Court heeds the import of the Fourth Circuit's observation in *Ferguson*: "in the absence of a statutory or regulatory issue exhaustion requirement, the Supreme Court has cautioned against judicially imposing such a requirement in a non-adversarial administrative proceeding." *Id.* The BOP compassionate release process is non-adversarial, and this Court declines to impose a strict exhaustion requirement and will instead consider Mr. Coleman's Motion for Compassionate Release on the merits. This stance is in line with the rationale in *Ferguson* where the court "[saw] no reason to limit [the defendant's] motion for compassionate release in the district court to only those grounds for compassionate release [the defendant] identified in his request to the BOP." *Id.* at 268. Because the BOP did not respond to Mr. Coleman's request within 30 days, this Court finds Mr. Coleman meets the exhaustion requirement.

**B.    Extraordinary and Compelling Reasons**

Mr. Coleman asserts that the "aggregate" of his medical condition, family circumstances, and rehabilitative efforts create "extraordinary and compelling reasons" for immediate release from custody. (ECF No. 244, at 1.) The Court will address each claim in turn, as well as the

claims in aggregate, before concluding that no sufficiently extraordinary and compelling reason exists here.

**1. COVID-19 Does Not Establish an Extraordinary and Compelling Reason for Mr. Coleman's Release**

Mr. Coleman's Motion for Compassionate Release contends that the Court should grant his immediate release because, medically, his hypertension and blood pressure make him particularly susceptible to complications from COVID-19. (ECF No. 244, at 12–15.) However, Mr. Coleman recognizes that he has previously brought this same argument before this Court and it was found that he "did not carry the burden of 'show[ing] both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his prison facility.'" (ECF No. 244, at 13 (quoting ECF No. 222, at 6–7.)) Mr. Coleman further admits that his "medical condition has not changed significantly to allow further argument that his current conditions show a particularized risk to support compassionate release." (ECF No. 244, at 13.)

Hypertension and blood pressure concerns were highlighted as risk factors early in the pandemic, but "highly effective . . . vaccines dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release." *United States v. Sanders*, No. SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) (collecting cases). As of September 29, 2022, Mr. Coleman had received the Pfizer COVID-19 vaccine and the Moderna booster. (ECF No. 245, at 2.)

The Court recognizes the grave health risks prisoners faced during the pandemic and commends nationwide efforts to promptly vaccinate prison staff and inmates. Fortunately, Mr. Coleman has received two doses of COVID-19 vaccination and takes medication for his blood pressure concerns. (ECF No. 245, at 2; ECF No. 244, at 13.) But the April 10, 2023 resolution terminating the National Emergency based on identified reduced COVID-19 trends suggests that

COVID 19—even while reappearing in variant form—no longer requires the drastic actions necessary during its peak.[14] The Department of Health and Human Services confirmed as much when it allowed the federal Public Health Emergency for COVID-19 to expire on May 11, 2023.[15] Considering the foregoing, the Court concludes that no medical condition on this record amounts to an extraordinary and compelling reason for Mr. Coleman's immediate release from federal imprisonment due to risks from COVID-19. (*See also* ECF No. 249-4.)

**2. Mr. Coleman's Family Circumstances**

Mr. Coleman argues that his mother's cancer diagnosis and treatment rises to the level of "extraordinary and compelling reasons" to justify a reduction in his sentence. (ECF No. 244, at 12.) This Court acknowledges the emotional impact of having a sick mother as well as the recent death of Mr. Coleman's father. However, the 2023 Sentencing Amendments allow consideration when "the defendant would be the *only* available caregiver for the parent." *See* U.S.S.G. § 1B1.13(b)(3)(C) (emphasis added).

Mr. Coleman has not provided evidence to support a finding that he is the *only available* caregiver for his mother. *See* U.S.S.G. § 1B1.13(b)(3)(C); *United States v. Hooks*, No. 3:18-CR-59-MOC-DCK-1, 2021 WL 796156, at *3 (W.D.N.C. Mar. 2, 2021) (rejecting family circumstances as an extraordinary and compelling reason in part because defendant had not presented evidence that no one else could care for his family member). In his release plan, Mr. Coleman informs the Court that he would be "staying in a room at his father's house where he is

---

[14] *See* H.R.J. Res. 7, 118th Cong. (2023), https://www.congress.gov/bill/118th-congress/house-joint-resolution/7 (last visited Apr. 8, 2024).

[15] *See COVID-19 Public Health Emergency*, U.S. DEP'T OF HEALTH & HUMAN SERVS., https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html#:~:text=Based%20on%20current%20COVID%2D19,day%20on%20May%2011%2C%202023 (last visited Apr. 8, 2024).

welcome by those still living in that house," "plans to drive a forklift for Standard Motor Company," "put his CDL coursework to use by seeking employment as a trucker," and "plans on starting his own box truck moving and storage business." (ECF No. 244, at 19.) But this Court does not find that these circumstances amount to extraordinary and compelling reasons to justify release. While these constitute appropriate plans for reentry into society, Mr. Coleman makes no mention of caring for his mother. In fact, it appears that there are other family members that he plans on living with who could possibly be available caregivers for his mother. Therefore, the Court does not find this to be an extraordinary and compelling justification for immediate release.

**3. <u>Mr. Coleman's Rehabilitative Efforts</u>**

Mr. Coleman further contends that the Court should grant his motion for compassionate release because he has engaged in post-offense rehabilitation, specifically that he completed educational and vocational programs to "prepare for employment and production to society after his release." (ECF No. 244, at 10.) Mr. Coleman further informed the Court that he has successfully "completed the 500 hour Residential Drug Abuse Program." (ECF No. 263, at 1.)

This Court commends Mr. Coleman for his ongoing efforts to improve himself and prepare for life outside of prison. (*See* ECF Nos. 249-2; 249-3; 254-2.) But Congress made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). "Prisoners are *supposed* to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary." *United States v. Logan*, 532 F.Supp.3d 725, 735 (D. Minn. 2021) (emphasis in original).

### 4. Aggregate of the Circumstances

Lastly, Mr. Coleman argues the "aggregate" of his circumstances supports a finding of extraordinary and compelling circumstances. (ECF No. 244, at 13.) This Court disagrees.

In *United States v. Martin*, the Fourth Circuit vacated and remanded the District Court's denial of both Defendants' motions to reduce sentence because the District Court failed to address any new mitigating evidence when denying the motions. 916 F.3d 389, 397–98 (4th Cir. 2019). If an individual is eligible for a sentence reduction, the Court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [Coleman] has taken." *See id.* at 397.

However, in contrast to *Martin*, this Court finds that Coleman does not show he is eligible for a sentence reduction pursuant to § 3582(c)(1)(A) because extraordinary and compelling circumstances do not exist on this record. COVID-19 no longer creates an emergency requiring drastic measures and Mr. Coleman has failed to show any particularized susceptibility to the illness. Additionally, Coleman's participation in an extensive number of educational and vocational programs are commendable, these post-rehabilitation measures do not warrant his early release in light of the seriousness of his convictions, the absence of a particular vulnerability to coronavirus, and the time remaining on his sentence. Finally, while the Court is sympathetic to Mr. Coleman's circumstances, his inability to be there for his family is an unfortunate consequence of his own actions. Even looking at the totality of Mr. Coleman's argument, COVID-19, his family circumstances, and even his commendable rehabilitative efforts do not arise to extraordinary and compelling circumstances.

### C. The 3553(a) Factors Do Not Support a Reduction in Mr. Coleman's Sentence

Although the Court has found that no extraordinary and compelling reasons exist to warrant Mr. Coleman's release, the Court will nonetheless consider his request under the applicable statutory sentencing factors articulated in 18 U.S.C. § 3553(a).

The § 3553(a) factors support a denial of Mr. Coleman's motion for compassionate release. The sentencing judge previously considered Mr. Coleman's youth and the drug weights from prior offenses when Mr. Coleman was sentenced to 240 months, a downward departure from the 360 months to life range. Mr. Coleman's criminal history and underlying convictions demonstrate that he presents a threat to the public due to his disregard for the law. Mr. Coleman, a career offender, committed multiple felony drug offenses as an adult. BOP records show that Coleman has committed three disciplinary infractions during his time in federal detention,[16] and his previous criminal history indicates that the Court must consider public safety and deterrence of criminal conduct as factors weighing against relief here. 18 U.S.C. § 3553(a). In sum, the Court concludes that the record before it does not justify Mr. Coleman's early release from federal imprisonment.

## IV. Conclusion

For the reasons explained above, the Court DENIES the Motion. (ECF No. 244.) Mr. Coleman's letter motion, (ECF No. 263), is denied as moot.

An appropriate Order shall issue.

/s/ MHL
M. Hannah Lauck
United States District Judge

Date: 4/10/2024
Richmond, Virginia

[16] Mr. Coleman has been disciplined for possessing drugs or alcohol, possessing a hazardous tool, and being in an unauthorized area. (ECF No. 245, at 2.) These infractions took place in 2021, 2017, and 2013 so they are not recent. The Court takes note, however, that two of the violations are serious.